TRENTON AND MERCER COUNTY TRACTION CORPORA-
TION, PROSECUTOR, v. THE MERCER COUNTY BOARD
OF TAXATION ET AL., RESPONDENTS.

Argued June 7, 1917—Decided November 19. 1917.

A judgment of a county board of taxation, establishing a fair market value of property for purposes of taxation cannot be said, without some affirmative proof to support such contention, to be either unreasonable or without a substantial basis of fact to support it, where such judgment is based upon an estimate of value, supported by evidence, varying from the minimum figure to the maximum figure of those estimates and where there was no affirmative proof upon the part of the owner of the property to decrease the assessment.

------

On *certiorari* removing the judgment of the Mercer County Board of Taxation increasing valuations.

Before Justices TRENCHARD and MINTURN.

For the prosecutor, *Frank S. Katzenbach* and *Edward M. Hunt.*

For the city of Trenton, *Charles E. Bird* and *George L. Record.*

For the Mercer County Board of Taxation, *Martin P. Devlin.*

For Princeton township, *Bayard Stockton.*

For Ewing township, *Willis P. Bainbridge.*

For Lawrence township, *Harvey T. Satterthwaite.*

For Hopewell township, *Edwin C. Long.*

For Hamilton township, *Alvin W. Sykes.*

The opinion of the court was delivered by

MINTURN, J.   The Trenton Street Railway Company, the Mercer County Traction Company and the Trenton, Pennington and Hopewell Street Railway Company, traction companies in the county of Mercer, are leased to and operated by the prosecutor in this writ.

In the year 1915 these various units were assessed by the different municipalities in the county, into and through which they extended, in an amount aggregating $1,003,882, upon which valuation the prosecutor paid the annual tax for that year amounting to $21,553.72, in addition to the annual franchise tax of five per cent. upon the gross receipts for the same year.

Thereafter, on December 17th, 1913, Everett Townsend, a citizen and taxpayer, and Clinton J. Swartz, receiver of taxes of the city of Trenton, filed a petition with the county board of taxation, alleging that the property of the prosecutor was under-assessed by the city of Trenton for taxation purposes, for the year 1915, and petitions of like import were

thereafter filed by the townships of Lawrence, Princeton, Ewing, Hamilton and Hopewell. A hearing was held in due course with the result that the total assessment of the prosecutor for the year 1915 was raised from the sum of $1,003,882 to $2,064,727, being an increase of $1,060,845.

The writ of *certiorari* brings up the record of this proceeding for review, upon the ground generally of its unreasonableness and illegality in various aspects.

Before proceeding to discuss the validity of this contention we must premise that while the prosecutor was represented at the hearing by its counsel, and its officials, and cross-examined the witnesses produced, it offered no testimony in its own behalf but allowed the hearing to be determined by the *ex parte* case presented by the petitions. The case is constituted therefore, of a record which presents the testimony of Mr. Johnson, the president of the prosecutor, as to valuations of the constituent elements of the properties involved, made by him in 1910, for use before the public utility commission, upon an application by the prosecutor to issue additional bonds for the purpose of enabling the prosecutor to develop and improve the conditions of its constituent companies. His estimate of the cost of reproducing the properties at that time was $3,070,000, which was exclusive of the value of car barns, repair shops, tools and adjacent real estate.

Since that period and until the fall of 1915, he testified the prosecutor expended about $821,000 upon the various properties for rehabilitation and replacement. The public utility commission, for the purpose of determining the propriety of the proposed bond issue, caused an independent appraisement of the properties to be made, by Mr. Betts, its engineer, and the report of that official shows a valuation of $2,600,000 based upon the cost of reproduction. This was supplemented by the testimony of Mr. Rand and Mr. Brackenridge, two engineers, who testified that their judgment of value was $2,379,851.95, based upon cost of reproduction, and the present cost, less depreciation, $1,709,222.40.

The report of the board of public utility commissioners, as of September 30th, 1915, was offered in evidence, and shows a valuation based upon cost of reproduction, less depreciation of $2,685,500. The value of the car barns and other properties, real and personal, omitted by Mr. Johnson, the president of the company, from his estimate of value in 1910, was shown by witnesses upon this hearing to be $100,000.

In this situation we must assume in the absence of contrary evidence, that the county board acted properly, and upon due proof; and that the burden of proving facts to decrease the assessment rested upon the prosecutor. *Newton Trust Co.* v. *Atwood*, 77 *N. J. L.* 141.

In the absence of such affirmative proof upon the part of the prosecutor, it was open to the county board to rest its judgment, after due consideration of the testimony, upon any estimate of value varying from the minimum figure to the maximum of these estimates, and a judgment based thereon establishing the fair market value of these properties cannot be said without some affirmative proof to support the contention, either to be unreasonable or without a substantial basis of fact to support it.

The prosecutor, however, charges that the action of the board was *ultra vires*. We think it manifest that the power it exercised in this instance was expressly conferred upon it by sections three and four of chapter 125 of the laws of 1906, and that its exercise of the power thus conferred was in substantial conformity with the provisions of the act.

We think the case of *Long Dock Company* v. *State Board of Assessors*, 86 *N. J. L.* 592, relied upon by prosecutors, is not analogous to the present situation.

The rationale of the doctrine of that case was that the subconscious knowledge of members of the state board of assessors could not be injected into the case as an evidential factor upon which to base its judgment of value, because it lacked the essential requirements of juridical proof. That criticism is not applicable to the case *sub judice*, since the testimony adduced was admitted and treated with all the formal requirements, and subject to all the scrutiny and criticism

that characterize opinion evidence in a formal litigation *inter partes,* at law or in equity.

Its weight and importance in view of the qualifications and opportunities for accurate observation of the respective witnesses was, of course, peculiarly a matter for the consideration of the board. It is argued that the result was reached upon a percentage basis, and the authority for the assertion is a statement made by the clerk of the board, during a conversation with a representative of the prosecutor. Assuming such testimony to be admissible, we are still unable to perceive why the board should be foreclosed, as a *modus operandi,* from accepting the lowest estimate of value, as a basis and by a process of elimination and addition of the different factors omitted by some witnesses, and included by others, reach a result at once reasonable, legal and logical upon a percentage basis between the two extremes.

The result thus reached in any event is supportable by the testimony and was much below the valuation put upon the properties by the prosecutor's president in 1910, before the public utility commission, and which estimate took no account of an expenditure of over $800,000 after that estimate of valuation was made, and excluded any estimate of value of car barns, repair shops, tools and certain real estate holdings. Upon the subject of depreciation it had before it, the testimony of the various witnesses, as well as the report of the public utility commissioners, made for rate-making purposes, in which the market value of the properties as of September 30th, 1915, was fixed at the sum of $2,685,500.

Objection is made that the property of the prosecutor in the streets was illegally considered in the estimate of value. We find no evidence that the paving was included in the estimate, and if it was it seems manifest to us that it extended only to the concrete foundation to support and stabilize the tracks, an annexation which obviously rendered it taxable as a part of the substructure of the track.

The objection urged by the prosecutor that it received no notice of the application of Hopewell township, by which it

became a party to the proceeding, is inconsequential, since the prosecutor responded to the notice of hearing before the county board, cross-examined the witnesses, and introduced no evidence applicable to any of the protesting municipalities, and therefore it cannot be said to be injured by any informality which obviously has not prejudiced it, in the prosecution of its rights or in its legal status upon this judgment.

Our examination of the testimony has satisfied us that the conclusion of the county board in formulating its judgment was not unreasonaby or illegally reached; that it is supportable upon the facts and the figures adduced before it and should therefore be affirmed.